IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Statesville Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **GRAYSON O COMPANY,** | ) | Case No. 23-50124 |
| | ) | |
| Debtor. | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| **GRAYSON REAL ESTATE, LLC,** | ) | Case No. 23-50125 |
| | ) | |
| Debtor. | ) | |

## OBJECTION TO MOTION TO TRANSFER VENUE

Grayson O Company ("Grayson O") and Grayson Real Estate, LLC ("Grayson RE" and collectively with Grayson O, the "Debtors") hereby object to the *Motion of Bankruptcy Administrator to Transfer Venue of Bankruptcy Case* (the "Motion"). [Doc. 29 in Case No. 23-50124 & Doc. 10 in Case No. 23-50125]. In support of this objection, the Debtors show the Court as follows:

### BACKGROUND

Grayson O manufactures specialty hair care products for wholesalers, whose customers in turn include salons, retailers, and catalog sellers of beauty and grooming supplies. Grayson O. Stamey, Jr. ("Mr. Stamey") formed the company under North Carolina law on July 9, 1973. In its early days, Grayson O operated from multiple locations in and around Kannapolis, Cabarrus County, North Carolina, where Mr. Stamey and his wife, Edith, then resided. For example, the manufacturing aspect of the business operated from a former skating rink in Kannapolis, while inventory storage took place in a separate, leased warehouse nearby. In the late 1980s, Mr. Stamey ceded a controlling interest in Grayson O to his son, Van D. Stamey ("Van"). The company then constructed an approximately 52,000-square-foot manufacturing and warehousing building on a

+/-27-acre tract at 6509 Grayson Lane (formerly known as Newell Avenue) in Kannapolis, owned by Mr. Stamey and his wife (the "Plant"). On or about October 16, 2008, Van and his father formed Grayson RE under the laws of the State of North Carolina. Mr. Stamey and his wife then transferred the Plant property to Grayson RE in a deed dated October 30, 2008. The deed listed the address of Grayson RE as 199 Waddell Road, Mooresville, North Carolina, which was Mr. Stamey's then-residence in the Lake Norman area.

Van has resided at 259 Waddell Road, Mooresville, Iredell County, North Carolina (the "Residence") since approximately 1980. Van has served as president of Grayson O and its principal decision-maker since 1988. He is also the manager of Grayson RE. During his tenure as Grayson O's president, the company historically maintained six divisions or departments: office, laboratory, compounding, filling, decorating, and warehousing/shipping. Each of these departments had its own manager, who then reported to a general manager. The general manager, in turn, reported to Van. While familiar with the company's floor operations, the majority of Van's working time as president has always been spent developing customer and vendor relationships, securing sales of Grayson O's products, and overseeing office operations from a distance. Many of Grayson O's floor and office workers are longtime company employees, who – like Van – learned their roles from Mr. Stamey in the 1970s-1980s. They do not require significant day-to-day oversight. Thus, rather than spending each workday at the Plant, Van has consistently worked by phone from the Residence, spending in-office time at the Plant only when necessary to oversee a particular project or to conduct office meetings.

Van's son, Jared Stamey ("Jared"), became a minority shareholder and vice president of Grayson O approximately ten years ago. Jared spends a considerable amount of his working time in the sales area, but is also involved in overseeing the office and billing functions of the business.

Jared continues to live with Van at the Residence in Mooresville. While often working from home alongside his father, Jared also spends time at the Plant dealing with financial and bookkeeping matters. Mr. Stamey, the original founder, continued to work in sales at Grayson O with his son and grandson throughout the 1990s and 2000s. Thus, the operation of Grayson O has consistently been a family business, with three generations of Stameys guiding its operations.

As her age advanced, Edith Stamey suffered a stroke on September 6, 2019. She was moved at that time to a nursing home. Simultaneously, Van moved Mr. Stamey from the couple's home to the Residence. Edith Stamey moved to the Residence in December of 2019 when her condition improved. In order to care for Mr. Stamey and Edith, from that point forward, both Van and Jared spent the majority of each business day working from a home office (or around their dining room table) at the Residence, chasing leads, contacting customers and vendors, taking and making orders, and coordinating office and Plant activities remotely. The increased availability of internet communication, in addition to cell phones, made it easy for them to do so. The evidence in this matter will show that Van, in particular, did not travel beyond a two-mile radius from the Residence during the COVID-19 pandemic beginning in late 2019 for fear of contracting the illness and spreading it to his elderly parents.

Edith Stamey died on January 20, 2021. Mr. Stamey passed away on April 23, 2022. Following their deaths, neither Van nor Jared have altered their routines begun in late 2019, continuing to work remotely for the greatest portion of each day. The evidence will show that, consistent with his entire work history, Van Stamey spends 90% of his working time at the Residence. Jared, on the other hand, works remotely at the Residence 60% of the time. Van and Jared are the principal executives at both Grayson O and Grayson RE. Together, they direct, control, and coordinate both companies' operations from their home office at the Residence.

As a result of the COVID-19 pandemic, it became increasingly difficult for Grayson O to obtain materials in order to fill customer orders during 2021 and 2022. The company's production and revenues also dropped as orders slowed. Jared and Van were forced to cease continuous operations for weeks at a time and to furlough workers in 2023. It should be noted that they spent even less time at the Plant during these periods, when production came to a complete standstill. Grayson RE also failed to file its 2022 annual report during this period. The North Carolina Secretary of State administratively dissolved the company as a matter of record in March of 2023. As their business strategy moved to a potential sale of Grayson O and the Plant property, Van and Jared elected to change the principal place of business of both companies to the Stamey Residence when filing the necessary paperwork to reinstate Grayson RE as an operating business. This made sense to Van, Jared, and the companies' counsel, as the Stamey Residence had in fact been both entities' "nerve center" for a significant time, and moreover, it appeared neither company could continue to operate in their current form for much longer.

Grayson O and Grayson RE filed for protection under subchapter V of chapter 11 of the Bankruptcy Code in the Western District of North Carolina (the "Western District") on May 15, 2023. Both companies' petitions accurately listed their principal places of business as the Residence, rather than the Plant. Nevertheless, contending that the debtors have "manufactured" venue in the Western District improperly, the Bankruptcy Administrator seeks to have the cases transferred to the Middle District of North Carolina (the "Middle District").

# ARGUMENT

The Bankruptcy Administrator seeks to have the Debtors' bankruptcy cases transferred from the Western District to the Middle District on the grounds that venue is improper in the Western District under 28 U.S.C. § 1408, or alternatively, that venue is more convenient, or the interests of justice are better served by transferring venue to the Middle District. The Bankruptcy Administrator is incorrect on all accounts.

The Western District is a valid venue for these bankruptcy cases both because the Debtors are domiciled in North Carolina, meaning venue is proper in any federal district within the state, and because the Debtors' principal place of business is in the Western District. Moreover, transferring these bankruptcy cases would cause the parties in interest greater inconvenience and would do nothing to promote the interests of justice.

**A.     The Western District is an Appropriate Venue of the Debtors' Bankruptcy Cases**

Venue of bankruptcy cases under is governed by 28 U.S.C. § 1408, which provides that:

> a case under title 11 may be commenced in the district court for the district . . . in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; . . .

28 U.S.C. §1408(1).

"Section 1408 is written in the disjunctive; . . ." *In re Honeycutt*, No. 12-06921-8-JRL, 2012 Bankr. LEXIS 5857, at *6 (Bankr. E.D.N.C. Dec. 12, 2012). Venue of a bankruptcy case may therefore be proper in "many possible locations . . . " *Id*. (citation omitted). Under section 1408, venue is proper in any district "as long as one of the following four alternative tests for venue is satisfied: the debtor's (1) domicile; (2) residence; (3) location of principal place of business in

the United States, or (4) location of principal assets in the United States." *Id*. (citing *Broady v. Harvey (In re Broady)*, 247 B.R. 470, 472 (B.A.P. 8th Cir. 2000)).  A debtor's choice of venue is presumed to be proper and "'the party challenging a debtor's choice must show by a preponderance of the evidence that the venue is improper.'" *Id*. at *6-7 (quoting *Mid Atl. Retail Grp., Inc.*, No. 07-81745, 2008 Bankr. LEXIS 790, at *7 (Bankr. M.D.N.C. Jan. 4, 2008)).

When the debtor is a business entity, the debtor's "'domicile' is generally held to be its state of incorporation." *In re AnthymTV Co.*, 650 B.R. 261, 276 (Bankr. D.S.C. 2023).  A corporate "entity that is formed under the laws of a given state is domiciled in the entire state for purposes of section 1408(1) and may file a case under the Bankruptcy Code in any District in that state." *In re ERG Intermediate Holdings, LLC*, No. 15-31858-hdh11, 2015 Bankr. LEXIS 3639, at *12 (Bankr. N.D. Tex. Oct. 26, 2015).

An entity's principal place of business is that "place where a corporation's officers direct, control, and coordinate the corporation's activities.  It is the place that Courts of Appeals have called the corporation's 'nerve center.'" *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).  The "determination of a debtor's principal place of business is a question of fact." *In re Great Lakes Hotel Assocs.*, 154 B.R. 667, 671 (E.D. Va. 1992) (citing cases).

The Debtors are organized under the laws of the State of North Carolina.  Grayson O was formed in 1973 and Grayson RE was formed in 2008.  Both Debtors have therefore been domiciled in North Carolina for far longer than the 180 days preceding the Petition Date.  Because both Debtors have been domiciled "in North Carolina for more than the minimum period of time required by section 1408, any district in North Carolina, including the Western District, is a proper venue for [the Debtors'] chapter 11 case[s]." *In re Kaiser Gypsum Company, Inc.*, No. 16-31602, Docket No. 348 at 3 (Bankr. W.D.N.C. Jan. 30, 2017).

Likewise, as detailed above, the Debtors' officers direct, control, and coordinate all corporate activities from the Residence located in Mooresville. While the Debtors only identified the Residence as the Debtors' principal place of business in their most recently filed annual reports, Jared and Van began directing all corporate activities almost exclusively from their Mooresville office at least as early as 2019, making only occasional trips to the Plant located in Kannapolis. Because the Debtors' principal place of business (*i.e.,* its executive nerve center) is in Mooresville, venue is proper in the Western District.

The Bankruptcy Administrator has failed to carry her burden to show, by a preponderance of the evidence, that the Western District is an improper venue for these bankruptcy cases. The Court should therefore deny the Motion.

**B.    Venue in the Western District is More Convenient and in the Best Interests of Justice**

Where a bankruptcy case has been filed in a proper district, it may only be transferred "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. Courts determine whether to transfer venue by "look[ing] to the facts and circumstances of each case, considering in particular the proximity of the debtors, creditors, assets, and evidence to the court, as well as the economic administration of the estate." *In re Williams*, No. 10-01163-8-SWH, 2010 Bankr. LEXIS 1570, at *2 (Bankr. E.D.N.C. May 13, 2010) (citing *In re Commonwealth Oil Ref. Co.*, 596 F.2d 1239 (5th Cir. 1979) & *In re Mainline Contracting, Inc.*, No. 09-07927-8-RDD, 2009 Bankr. LEXIS 3644, at *10 (Bankr. E.D.N.C. Nov. 10, 209)).

Where "venue of a Chapter 11 case is valid, the 'debtor's [] choice of forum [is to] be accorded substantial weight and deference.'" *In re Bestwall LLC*, 605 B.R. 43, 51 (Bankr. W.D.N.C. 2019) (quoting *In re PWS Holding Corp.*, Nos. 98-212-SLR through 98-223-SLR, 1998 Bankr. LEXIS 549, at *4-5 (Bankr. D. Del. Apr. 28, 1998)). Moreover, courts do not take the transfer of venue of chapter 11 bankruptcy cases lightly. *In re DDMD Trucking, Inc.*, No. 14-

12511-tall, 2015 Bankr. LEXIS 257, at *9 (Bankr. D.N.M. Jan. 28, 2015). This is because "[a] venue transfer is a 'cumbersome disruption of the Chapter 11 process.'" *Id*. (quoting *In re Enron Corp.*, 284 B.R. 376, 386 (Bankr. S.D.N.Y. 2002)). A "party moving for the transfer must show by a preponderance of the evidence that the case should be transferred." *In re Commonwealth Oil Ref. Co.*, 596 F.2d at 1241. The Bankruptcy Administrator cannot carry her burden.

1. ***The Western District is a More Convenient Venue***

Courts look at the following factors to determine whether venue should be transferred for the convenience of the parties:

> (1) the proximity of creditors of every kind to the court; (2) the proximity of the Debtor to the court; (3) the proximity of the witnesses necessary to the administration of the estate; (4) the location of the assets; (5) the economic administration of the estate; and (6) the necessity for ancillary administration if a liquidation should occur.

*In re Bestwall LLC*, 605 B.R. at 53 (quoting *In re Lakota Canyon Ranch Dev., LLC*, No. 11-03739-8, 2011 Bankr. LEXIS 4652, at *3 (Bankr. E.D.N.C. 2011)). The "convenience" factors weigh in favor of this Court maintaining venue of the Debtors' cases.

<u>The Economic Administration of the Estate</u>

First, "the most important consideration is whether the requested transfer would promote the economic and efficient administration of the estate." *In re Commonwealth Oil Ref. Co.*, 596 F.2d at 1247, *accord In re Bestwall*, 605 B.R. at 53. Where all of the corporate officers "charged with formulating an acceptable [bankruptcy] plan for the Debtor . . ." are located within a district, '[t]he case will be more economically and efficiently administered from [that] district." *In re First Fruits Holdings, LLC*, No. 18-02135-5-DMW, 2018 Bankr. LEXIS 1676, at *11 (Bankr. E.D.N.C. June 6, 2018); *accord In re Commonwealth Oil Ref. Co.*, 596 F.2d at 1247.

All the Debtors' officers are located in the Western District, as well as the Debtor's counsel and counsel for the senior secured lender. The relevant case law illustrates these facts are important to determining that the Debtors' cases can be more efficiently administered from the Western District.

The Bankruptcy Administrator's only argument in favor of transferring venue to the Middle District on efficiency grounds is that the Debtors' primary assets are located there. However, the cases cited in support of this argument involved debtors whose primary or sole assets were located in states located a great distance from the districts in which they filed bankruptcy. *See In re Old Delmar Corp.*, 45 B.R. 883, 885 (S.D.N.Y. 1985) (transferring case from the Southern District of New York to the Southern District of Texas); *In re Grand Dakota Partners, LLC*, 573 B.R. 197, 205 (Bankr. W.D.N.C. 2017) (transferring case from the Western District to the District of North Dakota); *In re Rehoboth Hosp., LP*, NO. 11-12798 (KG), 2011 Bankr. LEXIS 3992, at *6 (Bankr. D. Del. Oct. 19, 2011) (transferring case from Delaware to the Northern District of Texas); *In re Pinehaven Assocs.*, 132 B.R. 982, 991 (Bankr. E.D.N.Y. 1991) (transferring case from the Eastern District of New York to the Northern District of Mississippi); *In re Pavilion Place Assocs.*, 88 B.R. 32, 36 (Bankr. S.D.N.Y. 1988) (transferring case from the Southern District of New York to the District of Minnesota).

The concerns regarding the increased costs of administering a bankruptcy where a significant portion of the debtor's assets are far away in an out-of-state district do not apply here, where the two potential venues are located in the same state. To the contrary, as will be discussed in greater detail below, transferring venue to the Middle District would only increase the costs of administration by forcing the Debtors' officers, the Debtors' counsel, counsel for the Debtors'

senior secured lender, and the majority of the Debtors' in-state unsecured creditors to incur otherwise unnecessary costs.

### The Proximity of Creditors to the Court

The proximity of creditors also weighs in favor of venue remaining in the Western District. Collectively, the Debtors scheduled 101 unsecured creditors. [*See* Doc. 38, Case No. 23-50124; Doc. 1, Case No. 23-50125]. The vast majority of these are spread across various states. *See id*. Of the 25 unsecured creditors that are located in North Carolina, fifteen (15) are in the Western District and only ten (10) are located in the Middle District. *See id*.

Additionally, the Debtors' senior secured creditor, Newtek Small Business Finance, LLC, is represented by counsel located in Charlotte, who supports venue remaining in the Western District. This factor demonstrates that allowing venue to stay in the Western District is more convenient for the parties in interest.

### The Proximity of the Debtor to the Court

This factor is concerned "with the corporation's employees who must appear in court, not with the employees who are on the production line." *In re Commonwealth Oil Ref. Co.*, 596 F.2d at 1248. As discussed above, both Debtors' officers are located in the Western District. While the Debtors' production line workers may reside in the Middle District, there is no reason to anticipate those employees will be required to appear in court during these bankruptcy cases. In fact, the Western District Bankruptcy Courts in either Statesville or Charlotte are substantially closer to the Debtor than the Middle District courts. This is so whether the distance is measured from the Residence or from the Plant, as shown in the two charts below:[1]

---

[1] Distances are measured by Google Maps – www.google.com/maps/dir

MWH: 10788.001; 00028648.3                    10

**Courts' Distance from Residence**
**259 Waddell Road, Mooresville, NC**

| Court Location | Distance from Residence |
|---|---|
| 200 West Broad Street Statesville (WDNC) | 15.7 miles |
| 401 West Trade Street Charlotte (WDNC) | 30.9 miles |
| 601 West 4th Street Winston-Salem (MDNC) | 60.3 miles |
| 101 South Edgeworth Street Greensboro (MDNC) | 88.3 miles |

**Courts' Distance from Plant**
**6509 Grayson Lane, Kannapolis, NC**

| Court Location | Distance from Plant |
|---|---|
| 200 West Broad Street Statesville (WDNC) | 30.4 miles |
| 401 West Trade Street Charlotte (WDNC) | 29.7 miles |
| 601 West 4th Street Winston-Salem (MDNC) | 56.2 miles |
| 101 South Edgeworth Street Greensboro (MDNC) | 68.7 miles |

The Western District Bankruptcy Court locations are substantially closer to the Debtor's nerve center *and* the Plant than either of the Middle District's court locations. Thus, the proximity factor also demonstrates that venue is more appropriate in the Western District.

<u>The Proximity of the Necessary Witnesses</u>

In a chapter 11 case that anticipates liquidation of the debtor's assets, few witnesses would be expected other than the debtor's officers. *See In re First Fruits Holdings, LLC*, 2018 Bankr. LEXIS 1676 at *9-10. As discussed above, the Debtors' officers in this case both reside in and conduct the majority of their business activities in the Western District where the Residence is

located, only traveling to Grayson O's Plant in Cabarrus County occasionally. Accordingly, this factor also indicates that the Western District should retain venue of these bankruptcy cases.

### The Location of the Assets

While the bulk of the Debtors' assets are located in the Middle District, this sole factor does not outweigh all of the reasons detailed above regarding why the Western District is the more convenient venue for these bankruptcy cases, including the location of the witnesses, the creditors, the Debtors' officers, counsel for both the Debtors and the primary secured lender, and the economic efficiencies promoted by maintaining venue in the Western District.

The Bankruptcy Administrator has not carried her burden of showing otherwise by a preponderance of the evidence. Therefore, the Court should deny the Motion.

### 2. *Transfer to the Middle District Would be Contrary to the Interests of Justice*

Another ground for transferring venue from one appropriately selected district to another pursuant to section 1412 is the "interests of justice." 28 U.S.C. § 1412. "The interests of justice standard 'is applied based on the facts and circumstances of each case.'" *In re Bestwall LLC*, 605 B.R. at 51 (quoting *In re Enron Corp.*, 284 B.R. at 403). As with the convenience of the parties standard, courts can look to various factors to determine whether the interests of justice support transferring a case from one appropriate venue to another. *Id*. These include:

> (1) whether transfer promotes the economic and efficient administration of the bankruptcy estate; (2) whether transfer facilitates judicial economy; (3) the parties' ability to receive a fair trial in either venue; (4) whether either forum has an interest in deciding controversies within its jurisdictional borders; (5) whether transfer would affect the enforceability of any judgment rendered; and (6) whether the debtor's original choice of forum should be disturbed.

*Id*. (citing *Brown v. Wells Fargo, N.A.*, 463 B.R. 332, 338 (M.D.N.C. 2011)).

As demonstrated above, allowing venue of these bankruptcy cases to remain in the Western District will promote economic administration of the estate and afford the various parties in interest greater convenience. The interests of justice therefore also suggest venue should remain in the Western District. The only ground identified by the Bankruptcy Administrator for transferring these cases in the interests of justice is the allegation that the Debtors have tried to "manufacture venue by changing their principal offices with the NC Secretary of State . . . ." in an effort to "forum shop." But the evidence shows that the Bankruptcy Administrator's fears of forum shopping are unfounded. The Residence has long served as the Debtors' principal place of business. Moreover, because the Debtors' are both domiciled in North Carolina (and have been since their inceptions), venue would be proper in the Western District pursuant to section 1408(1), even if their principal places of business were located in another district within this state.

In short, since the Western District is a proper venue for these cases, and since their administration can be more efficiently accomplished here, the Debtors' choice of venue should not be disturbed. The Bankruptcy Administrator has failed to carry her burden to show any good reason to transfer these cases by a preponderance of the evidence. The Court should therefore deny the Motion.

[Remainder of Page Intentionally Left Blank]

**WHEREFORE**, the Debtors respectfully request that the Court deny the Motion, direct that venue of these bankruptcy cases will remain in the Western District of North Carolina, and grant such other and further relief as is just and proper.

Dated: Charlotte, North Carolina
June 9, 2023

                **MOON WRIGHT & HOUSTON, PLLC**

                */s/ Richard S. Wright*
                Richard S. Wright (NC Bar No. 24622)
                rwright@mwhattorneys.com
                Caleb Brown (NC Bar No. 41131)
                cbrown@mwhattorneys.com
                212 North McDowell Street, Suite 200
                Charlotte, North Carolina 28204
                Telephone: (704) 944-6560
                Facsimile: (704) 944-0380
                *Counsel for the Debtors*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Objection to Motion to Transfer Venue* was served by electronic notification on those parties registered with the United States Bankruptcy Court, Western District of North Carolina ECF system to receive notices for this case on the date shown below.

Dated: Charlotte, North Carolina
June 9, 2023

**MOON WRIGHT & HOUSTON, PLLC**

*/s/ Richard S. Wright*
Richard S. Wright (NC Bar No. 24622)
rwright@mwhattorneys.com
Caleb Brown (NC Bar No. 41131)
cbrown@mwhattorneys.com
212 North McDowell Street, Suite 200
Charlotte, North Carolina 28204
Telephone: (704) 944-6560
Facsimile: (704) 944-0380
*Counsel for the Debtors*